IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANDREW STEPHEN BECK**, | Case No. 3: 14-cv-01803-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security | |
| Defendant. | |

Lisa R. Porter, KP Law PC, 5200 Southwest Meadows Road, Suite 150, Lake Oswego, Oregon 97035. Of Attorneys for Plaintiff.

Billy J. Williams Acting U.S. Attorney; Janice E. Hebert U.S. Attorney's Office, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, Oregon 97204. Daphne Banay, Special Assistant United States Attorney**,** Social Security Administration, Office of the General Counsel, 701 Fifth Avenue, Suite 2900, Mailstop 221A Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Andrew Stephen Beck ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income

PAGE 1 – OPINION AND ORDER

Benefits ("SSI"). For the following reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray,* 554 F.3d at 1226.

## BACKGROUND

### A.  The Application

Plaintiff is 39 years old. He protectively filed an application for DIB and SSI on May 23, 2011, alleging disability beginning on April 2, 2008.[1] AR 252-65. He asserts disability due to depression and bipolar disorder. AR 292. The Commissioner denied his application initially and upon reconsideration; thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 173-74. An administrative hearing was held on January 8, 2013. AR 69. At the hearing, Plaintiff amended his alleged disability onset date to March 10, 2010. AR 43. After the hearing, Plaintiff submitted additional evidence to the Appeals Council, which the Appeals Counsel considered before denying Plaintiff's request for review. AR 1. The denial by the Appeals Council made the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

---

[1] Plaintiff had previously been found to be disabled for a closed period from February 24, 2004 through March 31, 2008.

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous
      period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
      claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
      §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
      impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis continues. At that point, the ALJ must
      evaluate medical and other relevant evidence to assess and determine the
      claimant's "residual functional capacity" ("RFC"). This is an assessment
      of work-related activities that the claimant may still perform on a regular
      and continuing basis, despite any limitations imposed by his or her
      impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
      416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
      proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
      is the claimant able to make an adjustment to other work that exists in
      significant numbers in the national economy? If so, then the claimant is
      not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
      404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
      she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999); *Bowent*, 482 U.S. at 146 n.5. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. AR 23. The ALJ then applied the sequential process. AR 23-33. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended onset date of March 10, 2010. AR 23. At step two, the ALJ found that Plaintiff's sleep apnea, bipolar disorder, and anxiety disorder NOS (not otherwise specified) were severe impairments. AR 24. Although obesity does not constitute a severe impairment, the ALJ considered the effects of obesity on Plaintiff's ability to perform routine movement and necessary physical activity within the work environment. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. *Id.* The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertion levels but limited to simple, routine,

repetitive tasks consistent with unskilled work and with only occasional contact with the public.

AR 26. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant

work. AR 32. At step five, considering his age, education, work experience and RFC, the ALJ

determined there were jobs that existed in significant numbers in the national economy that

Plaintiff could have performed, including hand packager, produce packer, and production

assembler. AR 32-33. Thus, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly discounting Plaintiff's credibility;

(B) improperly discrediting lay witness testimony; and (C) improperly excluding some of

Plaintiff's limitations from the RFC.[2] Plaintiff also argues that the ALJ's decision was not

supported by substantial evidence in the record, particularly considering the new evidence from

Dr. Don Matsunaga.

### A.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. The ALJ found

Plaintiff not to be fully credible based on: (1) his daily living activities; (2) conservative medical

treatment and improvement with treatment; (3) reasons for leaving employment; and (4) lack of

objective medical evidence supporting Plaintiff's asserted symptoms and limitations.

There is a two-step process for evaluating the credibility of a claimant's own testimony

about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented

---

[2] Plaintiff did not raise credibility of medical evidence as an issue in his opening brief,
but arguably raised the issue in his reply brief. It is well established in the Ninth Circuit,
however, that "issues not 'specifically and distinctly raised and argued' in the opening brief need
not be considered by the court." *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995).
Thus, the Court will not consider the credibility of the medical evidence.

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins* 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ may also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1997.

### 1.  Daily Living Activities

The ALJ may consider a claimant's daily living activities to form the basis of an adverse credibility rating in two ways—when the activities contradict the claimant's allegations of a totally disabling condition or the activities meet a threshold for transferable work skills. *Orn* 495 F.3d at 639. Here, the ALJ relied on the former, finding that Plaintiff's daily living activities demonstrated that Plaintiff was not as limited as he claimed.

Plaintiff testified that he can be manic for long periods of time and that when he is manic he will not eat, sleep, or go outside, and he has no internal clock. He stated that he has regular depressive periods that last approximately five to six hours and during those times he does not want to get out of bed. He noted that the summer before the hearing he tried to take a college class but was depressed and remained in bed the first day of class. He testified that he is too anxious to drive over bridges, is anxious about using his CPAP machine[3], and shakes a lot when he gets anxious. He further testified that his symptoms have gotten worse over the past few years

---

[3] CPAP, or continuous positive airway pressure, is a treatment that uses mild air pressure to keep the airways open. CPAP is typically used to treat sleep apnea.

and it has become difficult for him to concentrate. AR 46, 51-54, 59. The ALJ found that

Plaintiff's testimony was belied by the fact that he can socialize with friends, can care for his

personal needs, can use the computer, and has not needed to use the emergency support of his

residential facility where he lives. The ALJ found these "essentially normal activities of daily

living suggest a higher level of functioning than that alleged by the claimant." AR 29.

Plaintiff lives in a residential facility designed for people with behavioral problems. It is

highly structured and controlled. The fact that Plaintiff has never used the emergency help

system in his residential facility does not demonstrate that Plaintiff's description of his

symptoms is not credible. Additionally, the ALJ's focus on Plaintiff's minimal activities of

socializing with a few friends, caring for personal needs, and checking sports scores on the

computer overlooks the testimony of Plaintiff's mother, Darlene Beck. As discussed further

below, Ms. Beck testified that: (1) Plaintiff cannot concentrate; (2) Plaintiff has poor short term

memory; (3) Plaintiff needs his mother to take him to his doctor's appointments, grocery

shopping, and to pick up his medications; (4) Plaintiff's mother tells Plaintiff what groceries he

needs; (5) Plaintiff generally has to put the groceries away another day; (6) Plaintiff cleans his

apartment only every few months; (7) Plaintiff's mother handles Plaintiff's paperwork and

finances and pays for his expenses; (8) Plaintiff can only use a microwave to cook; and

(9) Plaintiff has trouble with dental care. AR 63-65, 318-21.

Plaintiff's daily living activities are not "essentially normal." They reflect a less-than-

successful attempt to live a normal life. As the Ninth Circuit has recognized, "disability

claimants should not be penalized for attempting to lead normal lives in the face of their

limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Cooper v. Bowen*,

815 F.2d 557, 561 (9th Cir. 1987) (noting that disability claimants need not "vegetate in a dark

room" in order to be deemed eligible for benefits). The ALJ's conclusion that Plaintiff's daily living activities demonstrate he is less disabled than he reports is not supported by substantial evidence in the record and is not a clear and convincing reason to discredit Plaintiff.

### 2. Conservative Treatment and Improvement with Treatment

The ALJ also considered the conservative course of treatment and improvement from treatment in determining Plaintiff's credibility.[4] Conservative treatment can be considered when evaluating credibility regarding allegations of the severity of symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly considered the absence of medical treatment for allegedly debilitating back pain and the doctor's prescription of conservative treatment in discounting the credibility of claimant's pain testimony). If, however, the claimant has a valid reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's credibility. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ found that Plaintiff's treatment has been essentially routine and conservative in nature. The ALJ noted that Plaintiff only sees his therapist once a month for twenty minutes, has never been hospitalized, and is on a "fairly steady medication regimen." AR 29. Finally, the ALJ notes that Plaintiff's medical records indicate his medication has been helpful and that Plaintiff's

---

[4] The ALJ also noted that psychological consultative examiner Robinann Cogburn, Ph.D. "indicated that malingering needed to be ruled out." AR 30. That is not precisely Dr. Cogburn's conclusion. Dr. Cogburn noted that "[t]here were not strong indications suggestive of feigned mental illness, but the possibility of exaggeration or over-emphasis of symptoms cannot be ruled out on the basis of available information." AR 470.

testimony that his medication has decreased in effectiveness is contradicted by Plaintiff's reports to his physicians.

Plaintiff testified that he only sees his therapist for 20 minutes, once a month. Plaintiff does not have insurance and his therapy is provided by Clackamas County Public Health. The fact that he is only able infrequently to see a public health therapist does not demonstrate that Plaintiff lacks credibility.

Further, in considering Plaintiff's reported improvement with medication, the Ninth Circuit has emphasized that, in the case of mentally ill claimants, "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Rather, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id.* "While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018 (emphasis in original). Additionally, the fact "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace." *Holohan v Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ cites to instances in the record where Plaintiff reports improvement of some, but not all, of his symptoms. For example, on June 27, 2011, Plaintiff reported that "some of the symptoms have abated but not all." AR 401. On June 15, 2011, Plaintiff reported that he was

being helped "immensely" by Rispiridone, but at the same time he reported that his anxiety had increased. AR 403.

The ALJ also appears to have selectively picked from the record to support his conclusion that Plaintiff "consistently" reported his medication was working, while disregarding contrary evidence in the record. On April 5, 2010, Plaintiff reported suffering from a lack of attention and needing medication to help keep his "train of thought" and to help his "brain get more discipline[d]" so he could focus. AR 421. On June 22, 2010, Plaintiff reported suffering from anxiety and "obsessive" symptoms. AR 418. On July 29, 2010, he reported "rapid cycling" of his bipolar disorder that was under "limited control" and that he had increasing "paranoid ideation." AR 444. On September 1, 2010, Plaintiff complained about focus and concentration issues and surmised it may be due to his depression. AR 443. His doctor noted that Plaintiff has "fairly complicated dynamic mental health issues." *Id.* In March 2011, Plaintiff sought new medication to improve his "manic control and depression management" and noted that his mood had destabilized. AR 440-41. On May 5, 2011, Plaintiff noted some improvements but wanted his medications adjusted to "improve his quality of life." AR 406-07. Additionally, Plaintiff's mother testified that his symptoms were getting increasingly worse and that she had to increase the degree to which she has to take care of him. In summary, the ALJ erred in relying on reports of some improvement to find Plaintiff less than credible. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (finding the ALJ erred by relying "too heavily on indications in the medical record that [the plaintiff] was 'doing well,'

because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity").

Additionally, it appears the ALJ may have relied on the fact that Plaintiff failed to comply with his treatment in discrediting Plaintiff. An "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in determining the credibility of a claimant's pain symptoms. *Orn*, 495 F.3d at 636 (citations omitted). The ALJ explained that Plaintiff only infrequently used his CPAP machine. The ALJ also stated that in one instance Plaintiff may have been noncompliant with his medication.

With respect to Plaintiff's noncompliance in using his CPAP machine, Plaintiff explained that he has "quite a bit of anxiety" associated with using the machine. AR 52. In light of Plaintiff's mental health issues, this is a reasonable explanation for failing to use his CPAP machine.

The ALJ cites to only one report by Plaintiff that he missed taking his Depakote dose to conclude that Plaintiff may be noncompliant with his medication. This instance of Plaintiff missing his Depakote was adequately explained because he spent the night at his mother's house without his medicine. AR 442. There are a few notations in the record where Plaintiff's providers speculated whether Plaintiff was fully compliant with his medication, but the record does not support that he was generally noncompliant with his medication. Additionally, before using lack of compliance to discredit Plaintiff, the ALJ should consider whether Plaintiff's bipolar disorder affected his medication compliance, including his inability to drive to pickup his medications. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (citations omitted) ("[M]ental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease), [ . . . ] may

prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to

treatment."). Plaintiff's purported lack of compliance with prescribed treatment is not a clear and

convincing reason to discredit his testimony.

### 3.  Plaintiff's Reasons for Leaving Prior Employment

In addition, the ALJ also considered Plaintiff's purported reasons for leaving his previous

job. In particular, the ALJ relies on Plaintiff's statements that he may have stopped working for

reasons not related to his disabling impairments. The ALJ notes that Plaintiff indicated that he

left work because he was not being given enough hours and that he planned to discontinue work

as a result of winning his previous Social Security hearing. AR 30.

The ALJ, however, selectively relied on the record rather than considering the entire

record when evaluating Plaintiff's departure from his previous job. The Ninth Circuit has

established that selecting only certain supportive facts and using them as a basis for concluding a

plaintiff lacks credibility is erroneous. *Garrison*, 759 F.3d 995 at 1017.

Here, the ALJ failed to discuss other pertinent facts in his analysis. For example, Plaintiff

testified that he received complaints from his boss about his performance and that the "higher

ups" wanted to fire him, but his boss was willing to be flexible because of Plaintiff's limitations.

AR 45-46. Plaintiff, however, was not able to attend work regularly because of his uncontrolled

sleep schedule and other limitations, so he received multiple warnings from another supervisor.

AR 46. At a different job, Plaintiff attempted to work nights, but was unsuccessful. He then

requested to be switched from the night shift to an alternative placement, but instead received

fewer hours. AR 47. Plaintiff indicated that this decrease in hours could have been due to poor

performance relating to his mental illness. AR 47. Plaintiff testified that his impairments likely

caused his work hours to decrease from a few days per week to only one day per week. The

ALJ's conclusion that Plaintiff left work because his hours were decreased and not because of

his alleged limitations is not supported by substantial evidence in the record and does not constitute a clear and convincing reason to discount Plaintiff's credibility.

The ALJ also relied on a combination of Plaintiff's statements to his treatment provider that he "won" his social security case and that he was planning to discontinue working for that reason. AR 30. The treatment note cited by the ALJ, however, only states that Plaintiff reported prevailing in his hearing and planning to quit his job, and fails to demonstrate a causal connection between the two occurrences. AR 445. Further, Plaintiff also reported at that time that he was "resigned" to his "fate" of mental illness and the practitioner found that Plaintiff presented with anxiety. *Id.* Accordingly, the fact that Plaintiff noted winning his previous social security complaint is not a clear and convincing reason to discount his credibility.

### 4.  Medical Evidence

Finally, the ALJ determined that Plaintiff is not credible because his symptoms are unsupported by the record. The fact that a claimant's report of symptoms is not supported by the objective medical evidence is insufficient, on its own, to support a negative credibility finding. *See Rollins v. Massanari*, 261 F .3d 853, 857 (9th Cir.2001); *Reddick*, 157 F.3d at 722. The Court has found that all of the other reasons provided by the ALJ in discounting Plaintiff's credibility are not clear and convincing reasons supported by substantial evidence in the record. Thus, the ALJ's determination that the objective medical evidence did not support Plaintiff's reported limitations is legally insufficient to discount his credibility.

### B.  Darlene Beck's Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the testimony of Plaintiff's mother, Darlene Beck. Ms. Beck testified at Plaintiff's 2013 hearing. AR 63-65. The ALJ asked her to testify about what has changed in Plaintiff's condition since 2010. She testified that he now has "very little ability left to concentrate" and "his short-term memory skills are very poor now."

AR 63. She further testified that she takes Plaintiff out twice a week—to his doctor appointments, grocery shopping, and to pick up his medication. She needs to remind him what groceries to buy, and they leave the groceries on the floor because Plaintiff cannot put them away until another day. She noted that he has more anxiety and has more difficulty handling stress than he did in 2010. *Id.* She further testified that Plaintiff does not have stamina for simple projects and does not clean his apartment like he used to do. AR 64-65. She confirmed that she handles Plaintiff's paperwork and finances and pays for his expenses. AR 65.

In July 2011, Ms. Beck completed a questionnaire describing Plaintiff's limitations, noting that Plaintiff has difficulty regulating his sleep cycle; can only use the microwave to cook; has trouble with dental care; cleans only once every few months; and experiences memory and concentration problems. AR 318-22. Ms. Beck also noted that Plaintiff enjoys following sports, visiting his friend in his apartment complex, and going to dinner. AR 321. Ms. Beck noted that at that time, Plaintiff could handle his own finances. In Ms. Beck's hearing testimony, however, in discussing how Plaintiff's condition had deteriorated, Ms. Beck testified that she now has to handle Plaintiff's finances and paperwork and that Plaintiff no longer cleaned his apartment.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d), 416.913(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ found Ms. Beck's testimony to be generally credible, but gave it limited weight. AR 31. The ALJ discounted Ms. Beck's testimony because her statements were unsupported by medical evidence and were based mostly on Plaintiff's subjective complaints. *Id.*

The Commissioner concedes that the ALJ erred in discounting Ms. Beck's testimony because it was unsupported by medical evidence in the record. The Commissioner argues,

however, that this error is harmless because the ALJ provided another germane reason for discounting Ms. Beck's testimony—that it was primarily based on Plaintiff's subjective complaints, when the ALJ had already properly discounted Plaintiff's credibility.

The ALJ's conclusion that Ms. Beck's testimony was based on Plaintiff's subjective statements is not supported by sufficient evidence in the record. Ms. Beck's testimony primarily involves information that she witnessed or participated in, not that Plaintiff told her. For example, her testimony that Plaintiff cannot remember what groceries to buy, does not put away groceries or clean his apartment, needs to be driven to doctor's appointments, needs Ms. Beck to go with him to get his medications, and has Ms. Beck handle his finances is not based on Plaintiff's subjective statements but are, rather, based on Ms. Beck's personal observations and experiences in spending time with Plaintiff and at his apartment. There is also no evidence that Ms. Beck believes Plaintiff's short-term memory and ability to handle stress decreased in the years after 2010 simply because he told her so; instead these are Ms. Beck's conclusions based on time with Plaintiff, her son. Accordingly, the ALJ erred in failing to provide a germane reason to discount Ms. Beck's credibility.

**C.  RFC Formulation**

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC. The RFC represents the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.645(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. SSR 96-8p, available at 1996 WL 374184;20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Robbins*, 466 F.3d at 883.

In this case, the ALJ did not provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and the testimony of Ms. Beck. Because the RFC does not account for the all of the limitations that Plaintiff and Ms. Beck describe, the RFC assessment is erroneous.

**D.  New Evidence**

District courts must consider additional evidence submitted to the Appeals Council when the Appeals Council considers the new evidence in deciding whether to review a decision of the ALJ. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The new evidence "becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.*

Here, Plaintiff submitted to the Appeals Council the new evidence of Dr. Matsunaga's psychological evaluation from July 27, 2013. AR 539-547. Dr. Matsunaga diagnosed Plaintiff with Obsessive Compulsive Disorder. AR 543. Additionally, Dr. Matsunaga opined that Plaintiff's behavior reflects "poor persistence and pace, although there have been no clear opportunities to directly assess his capacity." AR 543. Dr. Matsunaga then concluded that Plaintiff's "persistence and pace are markedly impaired." AR 544.

The Appeals Council considered the new evidence but found that it did not provide a basis for overturning the ALJ's decision. AR 1-2. Dr. Matsunaga's medical opinion gave more weight to Plaintiff's diagnosis of Obsessive Compulsive Disorder, included observations of increased severity in symptoms, and noted more significant concentration and memory problems. This provides additional medical support in the record relating to Plaintiff's alleged symptoms and limitations. Upon remand, the ALJ must consider Dr. Matsunaga's opinion when weighing the medical evidence.

**E.  Credit as True and Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits . . . . " *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on the Court. *Garrison*, 759 F.3d at 999. It was recently described by the United States Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for

further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

As detailed above, the ALJ failed to provide legally sufficient reasons for finding Plaintiff partially credible and giving minimal weight to Ms. Beck's lay testimony. Although Plaintiff does not raise any direct credit-as-true arguments, the Court credits Plaintiff's testimony and Ms. Beck's lay witness testimony as true. Even with crediting this testimony as true, however, it is not clear that Plaintiff is disabled. Accordingly, a remand for further proceedings is appropriate. Upon remand, the ALJ shall accept as true Plaintiff's subjective symptom testimony and Ms. Beck's lay witness testimony, and shall consider Dr. Matsunaga's opinion evidence.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED, and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge